IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ROBERT DANIEL COOKS, PRO SE, also known as ROBERT D. COOKS, TDCJ-CID No. 522351,<br><br>    Plaintiff,<br><br>v.<br><br>SAMUAL[1] A. DEMERSON, Industrial Specialist 3, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE (TDCJ),<br><br>    Defendants. | 2:10-CV-0195 |

**MEMORANDUM OPINION, ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, AND ORDER OF DISMISSAL**

On this day came for consideration defendant DEMERSON's January 27, 2011 motion for summary judgment, with supporting brief and appendix of exhibits, as well as plaintiff's February 25, 2011 response, with supporting brief and appendix of exhibits. Plaintiff's claims against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE (TDCJ) were dismissed without prejudice for failure to state a claim on which relief can be granted by Order of Partial Dismissal issued October 19, 2010.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, filed the instant cause while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, pursuant to Title 42, United States Code, section 1983, complaining against defendants DEMERSON and TDCJ for

Plaintiff's claims against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE (TDCJ) were dismissed without prejudice on October 19, 2010, for failure to state a claim on which relief can be granted.

---

[1] As shown by defendant's pleadings, defendant actually spells his name, "Samuel."

By his August 20, 2010 Amended Complaint, plaintiff alleges on April 15, 2009, defendant DEMERSON assigned plaintiff to perform work which violated his medical restrictions of "no work around machinery with moving parts" and with knowledge that plaintiff was physically and mentally unable to perform the job. Plaintiff also asserts his training was inadequate and that, on the day in question, he informed defendant DEMERSON he was unable to perform his job assignment because his medications were making him lightheaded and dizzy and he lacked the concentration necessary to work on the machine. Plaintiff says DEMERSON's response was to require plaintiff to continue working and to tell him to do the best he could.

About two hours later, plaintiff suffered a work-related injury when the shoe-press machine came down on the end of his finger, punching a hole in it and breaking it. Plaintiff says he received four sutures, wore a finger splint for six weeks, and now has only 40-50% use of the finger.

Plaintiff requests monetary damages against defendant DEMERSON which he denominates as follows: $75,000.00 compensatory, $75,000.00 punitive, and $100,000.00 permanent damages.

## UNDISPUTED FACTS

Although neither party expressly acknowledges it, it is clear there is no dispute that plaintiff was a prisoner confined in the Clements Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) and defendant DEMERSON was employed with the Texas Department of Criminal Justice at all times relevant to this lawsuit and was acting under color of state law.

Defendant and plaintiff further agree as follows:

    A.    On February 23, 2009 an HSM 18 was issued for plaintiff showing work restrictions of (1) no lifting over 50 pounds, (2) no work in direct sunlight, (3) no temperature extremes, and (4) no humidity extremes.

    B.    On March 4, 2009, plaintiff was assigned to work at the Clements Unit Shoe Factory.

2

C. On March 5, 2009, plaintiff completed his training for the use of hand tools. On March 9, 2009 plaintiff completed his training at the DESMA Pre-Heater position. On March 23, 2009 plaintiff completed his training as a canvas trimmer.

D. On April 8, 2009 plaintiff wrote a Step 1 grievance alleging his work assignment violated his medical work restrictions and asking to be placed back on Inside Medical Squad. Plaintiff complained in the grievance he was being required to work around machines that gave off excessive heat.

E. The grievance was investigated, but the parties dispute the substance or significance of Ms. Shipp's answer. Ms. Holligan from Unit Classification responded to plaintiff's complaint that assignment to the Shoe Factory was appropriate to his medical work restrictions. Mr. McCrary, Asst. Manager of the Shoe Factory responded to plaintiff's complaint by saying the She Factory machines do not give off excessive hat with regard to work restrictions and outlined some of the ventilation equipment used in the Shoe Factory.

F. The grievance investigation concluded that plaintiff was appropriately assigned to the Shoe Factory and the Step 2 grievance resolution concurred.

G. Should temperatures rise, the Shoe Factory is equipped with five large exhaust fans mounted in the roof of the building and approximately seventeen hanging fans blowing directly on inmate work stations. Two fans blew directly on plaintiff's work position at the DESMA 2. Also the Shoe Factory has five large "swamp coolers" generally utilized in the summer months.

H. Amarillo had a low temperature of 48 degrees and a high temperature of 71 degrees and received .08 inches of rain on April 16, 2009.

I. On April 16, 2009 at approximately 10:15 a.m., plaintiff caught his right middle finger between the shoe plate and base plate of the DESMA 2 machine, breaking the tip of his fin ger and requiring four stitches.

J. Mr. McGaha of Shoe Factory Maintenance and an inmate inspected the DESMA 2 machine shortly after the accident and found it was working properly with no malfunctions.

K. On June 11, 2009, plaintiff received a thirty-day work restriction for no repetitive use of hands and sedentary work only.

L. The medical work restrictions that would prohibit an inmate from working on a DESMA machine are: (1) no repetitive use of hands and/or (2) no work around machines with moving parts. Plaintiff did not have either of these restrictions during his assignment at the Shoe Factory prior to the accident of April 16, 2009.

M. Each DESMA has an emergency stop button located on the control panel. Each DESMA position is operated by two air valve levers. The right lever opens and closes the foot mold and the left lever raises and lowers the foot form. These levers are positioned away from the moving parts and are located in a recessed area below the press area. These levers can only be hand activated; the recessed

    levers cannot be activated using a hip, knee, or leg. Bumping a lever or rubbing against a lever will not activate the lever.

N. Every Friday, the DESMA machines are checked to ensure proper operation and any necessary maintenance is performed.

### DEFENDANT' MOTION FOR SUMMARY JUDGMENT

By his motion for summary judgment, defendant DEMERSON presents the following evidence in his Appendix, with accompanying business records affidavits as needed:

1. Exhibit D-1: TDCJ HSM-18 forms for plaintiff;
2. Exhibit D-2: TDCJ Grievance Investigation Records for plaintiff;
3. Exhibit D-3: TDCJ Incident Report Records for the April 16, 2009 incident;
4. Exhibit D-4: Affidavit of Stuart Williams; and
5. Exhibit D-5: Affidavit of defendat Demerson.

Defendant argues he is entitled to Eleventh Amendment immunity as to plaintiff's claims against him in his official capacity. Defendant further contends plaintiff cannot show deliberate indifference by defendant DEMERSON and, in any event, defendant has adduced evidence showing his actions were reasonable. Defendant concludes he is entitled to qualified immunity as to plaintiff's claims against him in his individual capacity.

By his February 25, 2011 response, plaintiff presents summary judgment evidence in his Appendix as follows:

1. Exhibit A-1: Affidavit of Robert Cooks;
2. Exhibit A-2: Affidavit of Curtis Felts;
3. Exhibit A-3: Affidavit of Fred Abbott;
4. Exhibit B-1: Incident Report of Accident on April 16, 2009;
5. Exhibit B-2: Classification and Disciplinary Records;
6. Exhibit B-3: Medical Records; and
7. Exhibit B-4: TDCJ Policies.

Plaintiff contends he has shown defendant is not entitled to qualified immunity and has raised a genuine issue of material fact which overcomes defendant's motion for summary judgment.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful to avoid premature termination of legitimate lawsuits merely because of unskilled presentations. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In determining a movant's request for summary judgment, all reasonable inferences must be made in favor of the party opposing the motion. *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Only disputes of facts that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Upon such a showing, the burden of production shifts to the nonmovant to delineate specific facts which demonstrate the presence of a genuine

issue of material fact. *Id.*; *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992). A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

### THE STANDARD OF SUMMARY JUDGMENT REVIEW UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

## THE LAW AND ANALYSIS

**ELEVENTH AMENDMENT IMMUNITY**

Plaintiff argues in the supporting brief to his summary judgment response, that he has sued plaintiff solely in his individual capacity. Review of the "Relief" section of his amended complaint, to which plaintiff refers, fails to reveal any language limiting his claim against DEMERSON to defendant's individual capacity.

In any event, suit for monetary relief against a defendant in his official capacity is barred by the Eleventh Amendment. The Eleventh Amendment restricts federal court jurisdiction only in those cases in which the state is the real party in interest. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). A suit against an official in his official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992). Nothing about plaintiff's requested relief leads the Court to conclude plaintiff's claim falls within the *Ex parte Young* exception for injunctive relief. Consequently, plaintiff's action against defendant DEMERSON in his official capacity for monetary relief is foreclosed by the Eleventh Amendment.

"Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996).

**QUALIFIED IMMUNITY**

One of the basic human needs which prisons are required to provide prisoners is "reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2480-81, 125 L.E.2d 22 (1993) (quoting *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200, 109 S.Ct. 998, 1005, 103 L.E.2d . 249 (1989).

In gauging the conduct of state officials, the Court must use minimum constitutional standards as the measure, not the standards applicable to private industry or the recommendations

or safety codes of private organizations. *Bell v. Wolfish,* 441 U.S. 520, 543 n. 27, 99 S.Ct. 1861, 1876 n.27, 60 L.Ed.2d 447 (1979). Standards suggested by experts are merely advisory. *Bell,* at 543 n.27, 99 S.Ct. at 1876 n.27.

To state a constitutional violation regarding work conditions, plaintiff must show the work exposed him to a serious health or safety risk to which prison officials were deliberately indifferent. *Jackson v. Cain,* 864 F.2d 1235, 1246-47 (5th Cir. 1989). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

The appropriate definition of "deliberate indifference" under the Eighth Amendment is "subjective recklessness as used in the criminal law." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins,* 27 F.3d. 174 (5th Cir. 1994). In this regard the Supreme Court has cautioned:

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan,* 511 U.S. at 837-38, 114 S.Ct. at 1979. It is only under exceptional circumstances that a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.*

Absent a showing of deliberate indifference, the claim is necessarily one of negligence and no constitutional liability accrues. *See, e.g., Strhan v. Scott,* 61 Fed.Appx. 919 (5th Cir. 2003)(inmate not provided protective gear for exposure to "PVC"); *Jackson v. Cain,* 864 F.2d 1235 (5th Cir. 1989)(inmate not provided mask while working in corn dust); *Bowie v. Procunier,* 808 F.2d 1142 (5th Cir. 1987) (inmate lost sight in one eye when not provided safety glasses while chopping wood); *Sampson v. King,* 693 F.2d 566 (5th Cir. 1982)(inmate forced to work in field where pesticides had recently been sprayed).

The parties agree the incident occurred April 16, 2009 at about 10:15 a.m. Defendant has presented plaintiff's HSM-18[2] in force on April 16, 2009 and points out the only medically determined work restrictions imposed on plaintiff were no work in direct sunlight, no temperature extremes, and no humidity extremes [defendant's Appendix p 3]. After plaintiff's injury on the DESMA machine, additional work restrictions were added on June 11, 2009 as follows: sedentary work only, no lifting over 50 pounds, and no repetitive use of hands. Plaintiff does not contradict this evidence.

Plaintiff says defendant DEMERSON knew or should have known he was not supposed to work around moving parts, per Ms. Shipp's statement in response to plaintiff's April 9, 2008

---

[2] An HSM-18 is a TDCJ-CID form showing any medically determined work limitations a prisoner may have.

Step 1 grievance no. 2009131109, and further, that plaintiff told defendant on the day of the incident that he was on "medication that caused him to be drowsy and lack concentration needed to work, and the heat was causing him to be lightheaded and dizzy." He says his contention is not that the shoe factory was excessively hot, but that the machines gave off excessive heat.

Defendant's evidence shows plaintiff submitted a Step 1 grievance no. 2009131109 to prison officials on April 9, 2009, six days before the accident, complaining that, when he tried to see his psychologist during boot factory work hours, a Mr. Williams refused to let him go and wrote plaintiff a disciplinary case for refusing to trim shoes, his job assignment at the time, without a legitimate reason. Defendant's Appendix p9. The response by the grievance investigator read as follows:

> Your complaint has been investigated and reviewed. Ms. Shipp of Classification advises that you do not have to work around machines with moving parts and are appropriately assigned[3]. No further action is warranted.

Defendant's Appendix p10. Review of the Grievance Investigation Worksheet for that Step 1 grievance reveals Ms. Shipp's statement was inaccurately reported. Ms. Shipp actually responded:

> O/F does not have a no work around machinery with moving parts. He is appropriately assigned.

Defendant's Appendix p 15. Ms. Shipp signed that statement and dated it April 22, 2009. Underneath Ms. Shipp's statement is that of Ms. Holligan saying, "He is appropriated assigned." Ms. Holligan also signed her statement and dated it April 22, 2009. Defendant's Appendix p15. Therefore, the Step 1 grievance response appears to inaccurately report Ms. Shipp's response.

Further, as noted in the Step 1 grievance response, Ms. Shipp is assigned to Classification. She is not a medical professional and does not impose medically determined work restrictions. She consults records to see what restrictions have been imposed by medical caregivers. Critically, plaintiff has not alleged, much less adduced proof, that he had a medically-determined work restriction against working around machinery with moving parts; and all of the evidence of record is to the contrary. The statement attributed to Ms. Shipp contained in the Step 1 grievance response does not show defendant DEMERSON knew of any reason why

---

[3]The Court notes that, at the time he wrote the grievance, plaintiff actually was not working around a machine with moving parts, but, instead, was assigned to trim leather with a knife.

9

plaintiff should not be assigned to work on the DESMA machine and does not support plaintiff's claim of deliberate indifference against him.

As to plaintiff's contention that defendant DEMERSON should have relied on plaintiff's representation that he was on medication that made him sleepy and the machines gave off excessive heat, prison officials have no constitutional duty to believe an inmate's claims as to his medical condition as opposed to the findings of medical professionals. *See, e.g., Althouse v. Roe*, 542 F.Supp.2d 543 (E.D.Tex. 2008) (citing *Taylor v. McElvaney*, slip op.no. 1:01cv94 (N.D.Tex., Aug. 12, 2002)(unpublished) (available at 2002 WL 32138256)(no duty to believe inmate's allegations over officer's statement and medical record) (citations omitted)). Defendant DEMERSON was entitled to rely on the absence of any medical restriction based on plaintiff's medications and, further, on the extensive ventilation system (Defendant's Appendix p.49) and moderate daytime temperatures that April (Defendant's Appendix p45), both of which are shown by defendant's uncontested summary judgment evidence

Plaintiff further claims defendant DEMERSON failed to properly train him on the DESMA machine Take-Off Position and that there are no safety features, making the machine *per se* dangerous

Plaintiff claims he was working at the DESMA machine on the Take-Off position when he was injured and that he had received only limited and inadequate training for that position. Defendant responds that he did not assign plaintiff to the DESMA Take-Off position, but to the Put-On position, and provided him adequate training for that position. He says plaintiff must have taken over the Take-Off position when the inmate assigned there went to a lay-in that day. Further, plaintiff disputes defendant's Appendix p33 showing he had been trained for the Put-On position on April 7, 2009. Plaintiff says he was never trained for the Put-On position and didn't notice what he was signing when he signed acknowledging receipt of such training. Given that plaintiff's claim is he was injured while working at the Take-Off position, this factual dispute over training for another position is not material.

Both parties agree plaintiff was working at the Take-Off position on the DESMA machine when he was injured. Therefore, the critical issue appears to be whether plaintiff was trained for that position.

By his Exhibit A-1, plaintiff's unsworn statement under penalty of perjury, plaintiff states, in relevant part, as follows:

> 13) We left the office and went back to the DESMA #2, work station #2. There was 4 other inmates working around the DESMA when we got there, two black inmates were assigned to the Put-On position, one black inmate was working the control panel at the Operator position, and a white inmate was working on the Heat-Press position. No one was on the Take-Off position.
>
> 14) Demerson showed me where the two levers under the DESMA was, how to push and pull them to get the mold to open and close, and raise and lower the mold. He told me that I had to always pay attention to what I was doing or I could get my hand or finger caught in the machine like other inmates have done. He told me how take the shoes off the shoe horn and put the pair of shoes on the shoe rack behind me.
>
> 15) All this took no more than 3 minutes to explain. Demerson never showed me an automatic stop button to shut off power to the DESMA. I was never shown anything on the control panel, which is used by the Operator of the DESMA. After Demerson did this short demonstration, he walked off and told me to go slow till I got the hang of it. He never trained me again on this machine or any other position after April 7, 2009.

Plaintiff's Exhibit A-1 p4. Plaintiff goes on to state he worked for five more days on that position, complaining to defendant DEMERSON about the heat from the machine which, he says, when combined with his medications, caused him to be fatigued and have dizzy spells. Plaintiff says DEMERSON's response was to refuse to remove plaintiff from the position he was on, tell him to do the best he could, and tell him to walk it off.

Plaintiff's own unsworn declaration makes it clear that defendant DEMERSON provided him with some training on the Take-Off position. Although plaintiff contends he failed to show plaintiff how to work the automatic stop button on the control panel, it is clear plaintiff was not working the control panel position at the time of his accident. Further, defects in DEMERSON's training of plaintiff, if there were any, would appear to support, at most, a claim of negligence, not deliberate indifference. Negligence will not support a claim under section 1983.

Lastly, plaintiff argues the DESMA machine is *per se* unsafe because it has no hand or finger guards or other safety features. Defendant points to the regular weekly maintenance on the DESMA machines and their design so that the control levers are away from moving parts and in a recessed area below them, as well as the fact that they cannot be activated by an accidental bump or rub with the hip, knee or leg. Plaintiff argues the design of the machines is not a safety feature and presents an unsworn statement under penalty of perjury by an inmate Felts stating he was injured on the machine in May of 2004, while being supervised by a Mr. Osborn, and that he knows of two other inmates who were injured on the DESMA machine before plaintiff was. Defendant's Exhibit A-2).

By his sworn affidavit, defendant DEMERSON states that, "in [his] three plus years of experience, [he was] personally aware of only one other injury that occurred from operation of any DESMA machine prior to the incident of April 16, 2009. This incident was also due to inmate inattentiveness. It is [defendant's] experience that the DESMA machines are safe to operate provided, as with any other machine, that one pays proper attention." Defendant's Appendix p50.

The issue before the Court is not whether the DESMA machine needs hand or finger guards, or even whether a design feature which apparently keeps hands and fingers out of away from moving parts during normal operation is a safety feature. The question is simply whether or not plaintiff has presenting facts showing defendant DEMERSON knew of and disregarded an excessive risk to inmate health or safety or whether there was a substantial risk of harm that was so obvious that DEMERSON's knowledge can be inferred. The fact that DEMERSON knew of one previous accident in the past three years does not support a claim of a risk of substantial harm so obvious that defendant DEMERSON had to have known and ignored it. Further, the failure to install hand or finger guards appears to present a circumstance on point with earlier-cited Fifth Circuit cases involving the failure to provide protective gear or safety equipment and does not demonstrate a danger so obvious as to support a claim of deliberate indifference. *See,*

*e.g., Strhan v. Scott*, 61 Fed.Appx. 919 (5th Cir. 2003)(inmate not provided protective gear for exposure to "PVC"); *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989)(inmate not provided mask while working in corn dust); *Bowie v. Procunier*, 808 F.2d 1142 (5th Cir. 1987) (inmate lost sight in one eye when not provided safety glasses while chopping wood); *Sampson v. King*, 693 F.2d 566 (5th Cir. 1982)(inmate forced to work in field where pesticides had recently been sprayed); *Barrett v. Casal*, 2007 WL 2746954 (S.D. Tex., Sept. 18, 2007)(inmate not provided with protective gear during demolition of building potentially containing lead paint or asbestos); *Swann v. Union County Sheriff's Dep't*, 2006 WL 2990331 (N.D. Miss., Oct. 18, 2006)(inmate fell off roof when forced to work without safety equipment).

Plaintiff has not adduced evidence supporting his claim of deliberate indifference. In addition, defendant has presented evidence showing his reliance on plaintiff's medically-determined work limitations and his actions based on that reliance were reasonable. Defendant has shown he is entitled to qualified immunity from plaintiff's claims and plaintiff has failed to rebut that showing.

## CONCLUSION

For the reasons set forth above, it is clear that, drawing all reasonable inferences in favor of plaintiff, there is no material issue of disputed fact which precludes entry of summary judgment for the defendant pursuant to Rule 12(b)(1), FED.R.CIV.PRO., and that plaintiff has failed to defeat defendant's entitlement to qualified immunity. Federal Rule of Civil Procedure 56(c).

The motion for summary judgment filed by defendant DEMERSON should be and hereby is GRANTED. Federal Rule of Civil Procedure 56(c).

IT IS THEREFORE ORDERED that plaintiff's claims against defendant DEMERSON in his official capacity is DISMISSED WITHOUT PREJUDICE, FED.R.CIV.PRO. 12(b)(1), and plaintiff's claims against defendant DEMERSON in his individual capacity are DISMISSED WITH PREJUDICE.

The Court declines to exercise pendant jurisdiction of any state law claims asserted; and they are, therefore, DISMISSED WITHOUT PREJUDICE. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Corwin v. Marney, Orton Investments*, 843 F.2d 194, 200 (5th Cir.1988).

LET JUDGMENT BE ENTERED ACCORDINGLY.

The dismissal of plaintiff's claims against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE (TDCJ) without prejudice for failure to state a claim on which relief can be granted by Order of Partial Dismissal issued October 19, 2010 qualifies as a "strike" under the Prison Litigation Reform Act.

The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ—Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 9362159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342–0629, fax: 936-437–4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three–Strikes List.

IT IS SO ORDERED.

ENTERED this ___28th___ day of September, 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE